IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dennis Michael, *et al.*,

                                    Case No. 3:01CV7436

        Plaintiff,

                             ORDER

      v.

Margarette Ghee, *et al.*,

        Defendants.

These are claims under 42 U.S.C. § 1983 brought by inmates confined in Ohio penal institutions. Plaintiffs allege the state's parole system violates the U.S. and Ohio Constitutions, as well as state law.

Jurisdiction exists under 42 U.S.C. § 1331.

Pending are the State's motions to dismiss, for summary judgment, and to exclude certain of plaintiffs' exhibits.

For the following reasons, the State's motions to dismiss and for summary judgment are granted, and the motions to exclude shall be overruled as moot.[1]

## Background

Plaintiffs are "old law" inmates who were prosecuted under Ohio's former sentencing law, which expired in 1996. Doc. 140 at 6. The former sentencing law used indeterminate sentences: an inmate was given a minimum and a maximum sentence, such as five to twenty-five years. *Id.* at 10.

---

[1] No ruling is required on the motions to exclude because a decision either way would not affect the outcome of this decision.

These inmates were then subject to the Ohio Adult Parole Authority (APA), which determined when – between the minimum and maximum sentence – release was appropriate. Doc. 140 at 10-11. Inmates became eligible for parole on serving their minimum sentences, less credit for good behavior. *Id.* at 12-13.

In 1995, the Ohio legislature passed a new sentencing law. Under that law, the judge determines the exact sentence and parole is no longer available. Doc. 140 at 16. The law did not, however, retroactively eliminate parole for old law inmates or alter such inmates' parole eligibility dates.

In 1998, the APA adopted guidelines to channel the discretion of parole officials making release decisions for old law inmates. Doc. 39 at 10. The 1998 guidelines are similar to those used by the U.S. Parole Commission. *Id.* at 11. The new guidelines use two factors, outlined on a grid, to determine how long a prisoner should be incarcerated before parole. *Id.* The first factor is the offense behavior – the seriousness of the crime. *Id.* at 12. The second factor is the "risk of reoffense," which is based primarily on an inmate's prior criminal conduct and performance on probation and parole. *Id.* at 13.

"The presumptive amount of time an inmate should serve before parole is determined by finding the intersection between his offense category and the risk level on the grid." Doc. 39 at 13. Parole officials can, however, depart from the guidelines based on numerous factors, such as misconduct in prison and outstanding achievement in rehabilitative programming. *Id.* The guidelines do not enable the prison system to hold an inmate beyond the maximum sentence set by court. *Id.*[2]

---

[2]

Before 1998, the APA used guidelines adopted in 1987. Doc. 140 at 14. The 1987 guidelines used a weighted point system that considered, *inter alia*, the type of offense. *Id.* Plaintiffs do not challenge the 1987 guidelines.

The new guidelines did not alter the inmates' parole eligibility dates. The APA applied, and continues to apply, the 1998 guidelines to inmates sentenced before the guidelines' adoption.

Plaintiffs challenge many APA practices, procedures, and proceedings. Plaintiffs claim the guidelines, practices, procedures, and proceedings deny them, or will in the future deny them, consideration for parole in a manner that violates: 1) due process; 2) equal protection; 3) the Ex Post Facto Clause of the Federal Constitution; and 4) various provisions of state law. Plaintiffs also assert that the APA improperly promulgated the 1998 sentencing guidelines and those guidelines as written and as applied violate state law.

The State claims its actions are legal and proper, stating: 1) the majority of plaintiffs' claims raise issues that only involve state law, and therefore cannot be challenged via § 1983; 2) retroactive application of the 1998 guidelines does not violate the Ex Post Facto Clause because the guidelines are not "laws;" 3) inmates do not have a liberty interest in parole implicating the Due Process Clause; and 4) parole procedures do not violate the Equal Protection Clause because the suggested reasons for treating inmates differently, based on the sentencing law applicable at the time, are rationally related to a legitimate government objective.

### Discussion

### A. Federal Constitutional Claims

I will address plaintiffs' fifth, sixth, and seventh causes of action first because they allege federal constitutional violations by their own terms and are therefore cognizable under § 1983. The sixth cause of action argues that the State's parole procedures violate due process. The seventh alleges that the State violates equal protection by treating old law inmates different from new law

inmates. The fifth contends that retroactive application of the 1998 guidelines violates the Ex Post Facto Clause. None of these claims states a valid cause of action.

### 1. Sixth Cause of Action – Procedural Due Process

Procedural due process requirements only apply to deprivation of interests in liberty and property. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). The U.S. Constitution does not require states to provide due process absent such interests. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (stating that the purpose of process is to protect recognized liberty and property interests); *Bd. of Regents*, 408 U.S. at 569. The threshold question, thus, is whether plaintiffs have a protected liberty or property interest. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The U.S. Constitution does not create a liberty interest in parole. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Because Ohio law makes parole discretionary, inmates do not have a liberty interest in parole under state law. *Jargo v. Van Curen*, 454 U.S. 14, 20 (1981); *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235-36 (6th Cir. 1991); *Wagner v. Gilligan*, 609 F.2d 866, 867 (6th Cir. 1979); *State ex rel. Hattie v. Goldhardt*, 69 Ohio St. 3d 123, 125-26 (1994).[3]

If inmates do not have a liberty interest in parole itself, they cannot have a liberty interest in parole consideration or other aspects of parole procedures. *Brandon v. Dist. of Columbia Bd. of Parole*, 823 F.2d 644, 648 (D.C. Cir. 1987); *see also Olim*, 461 U.S. at 250 (state hearing requirements do not create a liberty interest absent an underlying liberty interest in the subject matter of the hearing); *Banner v. Bradley*, 28 F.3d 1213, *3 (6th Cir. 1984) (table) (because Tennessee did

---

[3]

Defendant correctly notes that, based on the cases cited, the U.S. Supreme Court, Sixth Circuit, and Ohio Supreme Court have all held that Ohio inmates have no liberty interest in parole. *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St. 3d 456 (2002), did not overrule these precedents.

not create a liberty interest in parole, inmates had no liberty interest in receiving a proper parole hearing as required by a state statute).

Because plaintiffs have no liberty interest in parole, their procedural due process claim fails.[4]

## 2. Seventh Cause of Action – Equal Protection

Plaintiffs argue the State violates the Equal Protection Clause because it distinguishes between old and new law inmates by, *inter alia*, giving new law inmates fixed sentences and old law inmates indeterminate sentences. Other alleged equal protection violations against old law inmates include: 1) promulgation of Ohio Admin. Code § 5120-2-03, which requires inmates to serve consecutively any sentences imposed for crimes committed on parole; 2) adoption of the 1998 parole guidelines; and 3) consideration by parole officials of prison misconduct in setting release dates.

Old law inmates do not have a fundamental right to release at the end of their minimum sentence. The U.S. Supreme Court has held there "is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 6; *Jackson v. Jamrog*, 411 F.3d 615, 618-19 (6th Cir. 2005). In addition, inmates are not a suspect class for Equal Protection Clause purposes. *Jackson*, 411 F.3d at 618-19. If state actions do not affect a suspect class or implicate a fundamental right, rational basis review applies. *Id.* Because the plaintiffs are not members of a suspect class and, as discussed above, parole does not

---

[4] Plaintiffs do not appear to be raising a substantive due process challenge to parole procedures. To the extent that they do, such a challenge would fail because the parole procedures challenged do not implicate a fundamental right or a protected liberty interest, *see Greenholtz*, 442 U.S. at 6; *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) (inmates cannot challenge state parole procedures under either substantive or procedural due process because they have no liberty interest in parole); *Jones v. Georgia State Bd. of Pardons & Paroles*, 59 F.3d 1145, 1150 (11th Cir. 1995) (rejecting substantive due process challenge on identical grounds).

implicate a fundamental right, the rational basis standard applies. *Greenholtz*, 442 U.S. at 6; *Jackson*, 411 F.3d at 618-19.

Under rational basis review, courts will uphold governmental policy if there is a rational relationship between the state action and some legitimate government purpose. *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005). Rational basis review is deferential: "the governmental policy at issue will be afforded a strong presumption of validity [. . .]" *Id.* "[U]nder rational basis review, a purported rational basis may be based on rational speculation unsupported by evidence or empirical data and need not have a foundation in the record." *Id.* (quotations and citations omitted). This standard places a "severe burden" on plaintiffs such that they "must negate all possible rational justifications" of the state action. *Id.* (quotations and citations omitted).

Here, rational bases exist for each of the State's actions at issue.

### a. Different Treatment of Inmates Based on Date of Conviction

First, defendants note there are several rational reasons that could have motivated the Ohio's legislature to require old law inmates to continue to serve their indeterminate sentences subject to Parole Board determinations. Among these are a desire to: 1) avoid passing retroactive legislation and altering the sentences of inmates already incarcerated; 2) give Ohio's old law inmates the incentive to obey prison regulations by keeping the parole system in place, which rewarded them for good behavior; and 3) acknlowedge the seriousness of the convicted offenses. Doc. 292 at 98. Plaintiffs have not negated any of these reasons.

### b. Promulgation of Ohio Admin. Code § 5120-2-03

Second, drafting Ohio Admin. Code § 5120-2-03 to require inmates to serve sentences for crimes committed on parole consecutively with original sentences was a rational continuation of existing practices. The same result was required by former O.R.C. § 2929.41(B).[5] Ohio's courts routinely required that sentences run consecutively. *Richards v. Eberlin*, 2004 WL 1152863, *3 (Ct. App.). This is so, even if the sentencing order for the crime committed while on parole is silent on whether the sentences should run concurrently or consecutively. *Eberlin*, 2004 WL 1152863 at *3; *State v. Rhoades*, 2001 WL 950685, *2 (Mahoning Co.); *see also Harris v. Ohio Adult Parole Auth.*, 2005 WL 3642706 (Ct. Cl.) (stating that sentences had to be served consecutively because the inmate was incarcerated from crimes committed in 1989 while on parole from a sentence he was serving for a 1982 conviction).

### c. Promulgation of the 1998 Guidelines

Third, the State had a rational basis for adopting the 1998 guidelines. The previous guidelines "did not allow for sufficiently accurate evaluation of inmates' cases, and [they] produced inconsistent results and very low release rates." Doc. 292 at 99. The state legislature intended the guidelines to "promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing the opportunity for consideration of parole eligibility on an individual case basis." *Id.* (quoting *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St. 3d 456 (2002)). The guidelines implement that rational objective by providing a means to channel the factors parole officials focus on when making release decisions. Thus, the guidelines have a rational relationship between their objective and the means employed.

---

[5] Former O.R.C. § 2929.41(B) states: "A sentence of imprisonment shall be served consecutively to any other sentences of imprisonment, in the following cases: [. . .] (3) When it is imposed for a new felony committed by a probationer, parolee, or escapee." Former O.R.C. § 2929.41(B)(3) (effective prior to July 1, 1996).

### d. Consideration of Prison Misconduct in Release Decisions

Finally, it is rational for parole officials to consider prison misconduct when making parole release determinations. One purpose of the parole system is prison management, which is facilitated by providing incentives for good behavior and disincentives for misconduct. Doc. 292 at 100. Thus, it is rational to consider inmates' violations of prison rules during parole hearings. *Id.*

Thus, all aspects of plaintiffs' Equal Protection Clause claims fail because the state actions in question pass rational basis review, justifying summary judgment for the defendant.

### 3. Fifth Cause of Action – Ex Post Facto Clause

In their fifth cause of action, plaintiffs allege that retroactive application of the 1998 new guidelines violates the Ex Post Facto Clause of the U.S. Constitution. U.S. Const. art. 1, § 10, cl. 1. Specifically, plaintiffs argue the APA violates the Clause because it applies rules and guideline ranges from the 1998 guidelines to inmates who were convicted before the 1998 guidelines' enactment. *See* Doc. 140 at 102-05.

### a. Guidelines Are Not "Laws"

The Constitution bars enactment of ex post facto laws. U.S. Const. art. I, § 10, cl. 1. "[L]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). Retroactive changes to laws governing parole of prisoners can violate the Ex Post Facto Clause. *See Lynce v. Mathis*, 519 U.S. 433, 445-46 (1997). The State argues the APA's internally-created parole guidelines are not "laws" and therefore not within the ambit of the Ex Post Facto Clause.

Internal parole guidelines "are not 'laws' for ex post facto purposes because the guidelines do not absolutely restrict parole officials' discretion." *Ruip v. United States*, 555 F.2d 1331, 1335-36 (6th Cir. 1977) (upholding retroactive application of federal parole guidelines on theory that

8

guidelines are not laws); *see also Shabazz v. Gabry*, 123 F.3d 909, 915 (6th Cir. 1997) (same, only with state parole guidelines); *Conley v. Ghee*, 23 Fed. Appx. 506, 507 (6th Cir. 2001); *Berry v. Traughber*, 48 Fed. Appx. 483, 485 (6th Cir. 2002) (holding that "the new policy is not a law subject to ex post facto analysis as it is more in the nature of a guideline for the [parole board] to use in exercising its discretion and as [the inmate] provided no evidence that the [parole board] lacked the discretion to modify the policy").

The guidelines do not bind the APA "[b]ecause neither statute nor regulation created the guidelines, and the board need not follow them, they place no substantive limits on official discretion." *State ex rel. Hattie v. Goldhart*, 69 Ohio St. 3d 123, 125 (1994).

The Sixth Circuit held the guidelines were not laws even though "the overwhelming majority of decisions fell within the guidelines" based on the fact that only five to twelve percent of decisions were outside the guidelines. *Ruip*, 555 F.2d at 1333. Thus, even evidence that parole authorities adhere to the guidelines ninety-five percent of the time does not make the guidelines "laws" for Ex Post Facto Clause purposes. *Id.*

Because Ohio's parole guidelines are not "laws" under the Ex Post Facto Clause, that provision does not bar retroactive application of them.

### b. Retroactive Effect Permissible

Even if, however, the guidelines were laws for Ex Post Facto Clause purposes, the plaintiffs' claim would still fail because the Constitution does not impose a per se ban on laws that retroactively apply changes to parole procedures.

"[N]ot every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." *Garner v. Jones*, 529 U.S. 244, 249-50 (2000). The test

is "whether retroactive application of the change in [the] law created a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* (citations omitted).

In *Garner*, 529 U.S. at 250, the Court held that a law retroactively reducing the frequency of parole reconsideration hearings did not violate the Ex Post Facto Clause. *Id.* The Court noted: 1) the state's parole policies allowed for expedited reviews and reconsideration based on suitability for release of particular prisoners,  *id.* at 253; and 2) the change did not alter the date of the prisoner's initial parole hearing. *Id.* at 250.

The Sixth Circuit has held that retroactive use of parole guidelines challenged here "do[es] not show a significant risk of increased punishment" and that "Ohio parole officials have complete discretion in deciding whether an Ohio inmate will be paroled." *Kilbane v. Kinkela*, 24 Fed. Appx. 241, 243 (6th Cir. 2001); *see also Akbar-El v. Wilkinson*, 1999 WL 282688, *2 (6th Cir.). Ohio courts have likewise held that retroactive application of the 1998 guidelines does not violate the Ex Post Facto Clauses of either the Ohio or U.S. Constitutions. *Thompson v. Ghee*, 139 Ohio App.3d 195, 199 (Ct. App. 2000); *see also State v. Wright*, 2002 WL 31501275, *11-13 (Ct. App.); *State v. Masten*, 2002 WL 462857, *2 (Ct. App.).[6]

---

[6]

Plaintiffs argue that parole authorities violate the Ex Post Facto Clause by refusing to exercise discretion in rigidly adhering to guidelines. In support of that proposition, plaintiffs cite an unreported district court case from the Northern District of Georgia, *Jackson v. State Bd. of Pardons & Parole*, 2002 WL 1609804 (N.D. Ga.). The discussion in *Jackson* is distinguishable because in that case authorities changed the parole procedures to delay significantly inmates' initial parole eligibility hearing. Here, the 1998 guidelines do not alter the initial parole eligibility date of Ohio inmates. Second, the Sixth Circuit has analyzed the Ex Post Facto Clause implications of the 1998 guidelines and upheld them. *See, e.g.*, *Berry v. Traughber*, 48 Fed. Appx. 483, 485 (6th Cir. 2002) (holding that Ohio's 1998 guidelines are not laws for Ex Post Facto Clause purposes); *Kilbane v. Kinkela*, 24 Fed. Appx. 241, 243 (6th Cir. 2001)(holding that retroactive application of guidelines does not significantly increase risk of prolonged incarceration). District courts in the Sixth Circuit cannot rule otherwise based on either *Jackson* or the plaintiffs' statistical evidence allegedly showing that the APA does not exercise its discretion but merely follows the guidelines.

I see no reason to depart from those precedents. The 1998 guidelines do not change the date of inmates' initial parole hearings. To be sure, the guidelines recommend longer continuances before inmates receive reconsideration hearings but parole officials are not constrained by the Ex Post Facto Clause from postponing further consideration of parole suitability. In any event, the guidelines do not keep inmates in prison beyond their maximum sentence date.

Therefore, plaintiffs' fifth cause of action fails, and I will grant the state of Ohio's motion for summary judgment.

### B. State Law Claims not Subject to § 1983

Section 1983 provides a remedy for deprivations of federal statutory and constitutional rights; it does not, however, cover violations of state law. *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989).

Because plaintiffs' first through fourth claims, along with all claims in the supplemental complaint, allege violations of state law, I will dismiss them under Rule 12(b)(6).

### 1. First Cause of Action - Abuse of Discretion

In their first cause of action, plaintiffs allege abuse of discretion by the APA. This claim challenges parole practices between 1995 and 1997, as well as the APA's 1998 promulgation and implementation of new guidelines. In this cause of action plaintiffs contend, *inter alia*, that the new guidelines are invalid because the APA did not follow proper procedures when promulgating those guidelines.

The first cause of action does not invoke any specific provision of the U.S. Constitution. Instead, it describes how the new guidelines allegedly counter the purpose and goals of the prior guidelines.

11

Plaintiffs' first cause of action is thus essentially a state law challenge to the promulgation of the new guidelines. *See* Doc. 140 at 22 (stating that the "subject of federal review" was the act of "[p]romulgating guidelines which violate the U.S. Constitution and violate core principles of criminal law [. . .]"). The promulgation of new parole guidelines is a function of state law that does not involve federal statutory or constitutional issues.[7] No federal statutory or constitutional issues are implicated in the state law framework governing the Parole Board reviews that occurred between 1995 and 1997. Therefore, because plaintiffs cannot use § 1983 to enforce rights created solely by state law, the claim fails.[8]

Elsewhere in this opinion, I analyze whether the 1998 guidelines violate the Ex Post Facto, Due Process, and Equal Protection Clauses. To the extent that the first cause of action seeks to invoke those clauses, it is redundant. Other avenues to attack the constitutionality of the manner in which the APA promulgated the 1998 guidelines do not apply here. For example, arguing the promulgation of the guidelines violated the Presentment Clause of the U.S. Constitution, *see, e.g.*, *U.S. v. Curtsinger*, 1995 WL 316673 (6th Cir.)(citing, *inter alia*, *U.S. v. Macias*, 930 F.2d 567, 571-

---

[7]

The first cause of action would still fail even assuming, *arguendo*, it argues that the APA improperly promulgated the new guidelines. Ohio courts have repeatedly upheld the manner in which the APA adopted the new guidelines. *Poluka v. Ohio Adult Parole Auth.*, 2003 WL 124867, *4 (Ct. App.) (holding "it is well-established that the [Ohio] parole guidelines are not administrative rules and need not be promulgated in accordance with the Ohio Administrative Procedure Act"); *see also Ankrom v. Hageman,* 2005 WL 737833, *11 (Ct. App.); *State ex rel. Moore v. Ohio Adult Parole Auth.*, 2003 WL 1849212, *4 (Ct. App.); *Perotti v. Ishee*, 2001 WL 1357039, *3 (Ct. App. 2003)*; *Mayrides v. State Adult Parole Auth.*, 1998 WL 211923, *5 (Ct. App.).

[8]

The plaintiffs also seem to challenge parole procedures used between 1995 and 1997 – before the 1998 guidelines were adopted – but they do not state the basis on which they believe that those procedures violated the U.S. Constitution. Elsewhere in their pleadings plaintiffs articulate specific grounds for their belief that parole reconsideration decisions from 1995 and 1997 were governed by improper motives and procedures. I address those arguments (which all fail) in detail as they arise.

72 (7th Cir. 1991)), would be unavailing because the Presentment Clause only applies to the federal government. Promulgation of the guidelines did not violate the U.S. Constitution.[9]

### 2. Second Cause of Action – Arbitrary and Capricious Decision-Making

In their second cause of action, plaintiffs allege the APA engaged in arbitrary and capricious decision-making. This cause of action challenges, *inter alia*, parole release procedures between 1995 and 1997, the operation of a prior version of the Ohio Administrative Code, and the APA's consideration of inmate misconduct while incarcerated in making parole release decisions.

The challenges are all based solely on state law, do not implicate federal or constitutional issues, and thus are not actionable under § 1983. The first claim asserted on this cause of action relies on state parole guidelines. The second contends agency policy wrongly abrogated valid portions of the Ohio Administrative Code. The third maintains the APA relied on biased and erroneous information in making decisions. None of these raise federal statutory or constitutional issues and thus fail to state cognizable claims under § 1983.

### 3. Third Cause of Action – Separation of Powers Doctrine

---

[9]

Although a violation of a state-created liberty interest may amount to a violation of the U.S. Constitution, not every violation of state law is a violation of the Constitution and thereby capable of supporting a § 1983 action. *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988); *Buckley v. Barlow*, 997 F.2d 494, (8th Cir. 1993); *Vruno v. Schwarzwalder*, 600 F.2d 124, 130-31 (8th Cir. 1979) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension."); *Richmond v. Cagle*, 920 F.Supp. 955, 958 (E.D. Wis. 1996) ("A violation of state law is not itself a violation of the Constitution.") Ohio courts have repeatedly ruled that the APA did not violate state law in promulgating the new guidelines, and it would be improper for me to rule to the contrary.  *Archie*, 847 F.2d at 1217 (holding that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"). Likewise, I cannot "transmute a violation of state law into a violation of the Constitution." *Id.*

Plaintiffs' third cause of action alleges the APA violates the separation of powers doctrine by usurping the state judiciary's sentencing authority by: 1) continuing to imprison inmates beyond their state-law minimum sentences through guideline ranges with higher minimums; and 2) revoking parole based on technical violations.

The alleged violation of separation of powers doctrine relates to the relationship between the branches of Ohio's government: plaintiff's contention being that the executive, through the APA, is taking over the job of the state judiciary. Any alleged violation concerns only state law. Thus, § 1983 is inapplicable.

### 4. Fourth Cause of Action – Bad Faith

Fourth, plaintiffs allege defendants acted in bad faith to deny parole to inmates who committed crimes before July 1, 1996, by circumventing the Ohio Supreme Court's decision in *Layne v. Ohio Adult Parole Authority*, 97 Ohio St. 3d 456 (2002). In general terms, this cause of action asserts that the APA is improperly disregarding an Ohio Supreme Court ruling. This is only a state law issue, to which § 1983 does not apply.

### 5. Supplemental Complaint – Wrongful Imprisonment Under State Law

All claims in the supplemental complaint also fail. The supplemental complaint seeks damages for wrongful imprisonment under a state statute, O.R.C. § 2743.48. Greater description of the claims in the supplemental complaint is not needed because plaintiffs cannot use § 1983 to seek redress for alleged violations of a state statute.

### Conclusion

For the foregoing reasons, I find that the guidelines, practices, procedures, and proceedings that plaintiffs' complaint challenges do not violate due process of law or equal protection under the law, as guaranteed by the U.S. Constitution. Nor do they contravene the Ex Post Facto Clause. I

14

conclude further that this court has no jurisdiction under the Civil Rights Act, 42 U.S.C. § 1983, to consider or adjudicate those claims that assert violations of the Constitution and laws of the State of Ohio.

It is, accordingly,

ORDERED THAT the State of Ohio's motion for dismissal and for summary judgment be, and the same here, is granted.

So ordered,

/s/James G. Carr
James G. Carr
United States District Judge